Filed 1/6/21  P. v. Gompf CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073837 |
| v. | (Super.Ct.No. FVI19000166) |
| DONALD RAY GOMPF, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant and appellant Donald Ray Gompf violated the probation condition

requiring him, as a homeless probationer, to report daily in person to his probation

officer.  On appeal, defendant argues the trial court's finding he violated probation must

be reversed because it was based on a facially unconstitutional probation condition.

Specifically, defendant asserts the condition requiring him, as a homeless probationer, to

report daily in person violates the right to travel and it was unreasonable.  We reject

defendant's contentions and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.      *Prior Criminal History*

Defendant has a lengthy criminal history, dating back to February 1990.  He has

been convicted numerous times for driving under the influence, driving on a suspended or

revoked license, and domestic violence.  He has also been granted, and violated,

probation numerous times.  In pertinent part, in 1994 and 1997, defendant was convicted

of misdemeanor crimes involving domestic violence.  In February 2017, he was

convicted of battery (Pen. Code,[2] § 242) after being charged with inflicting corporal

injury on a spouse/cohabitant (§ 273.5, subd. (a)).  He was granted probation in that

---

[1]  The factual background of defendant's underlying criminal conduct is taken
from the probation report.

[2]  All future statutory references are to the Penal Code unless otherwise stated.

2

February 2017 case, and a protective order against him was issued for his ex-wife. Defendant violated that probation four times, including violations in March 2017, January 2018, February 2018, and December 2018. As a result, defendant was convicted in March 2017 and January 2018 for violating court protective orders (§ 166, subd. (c)(1) and (a)(4)).

B.     *Current Offense*

On October 27, 2018, defendant, who had a protective order against him, took his ex-wife's dog, refused to give the dog back when she asked, chased her, and punched her in the arm. On the previous day, defendant approached his ex-wife, yelled at her, and pushed her.

On January 16, 2019, a felony complaint was filed charging defendant with one count of violating a domestic violence protective court order with a credible threat of violence and with prior convictions for violating a protective order (§ 166, subd. (c)(4); count 1) and one count of battery (§ 243, subd. (e)(1); count 2).

About a month later, pursuant to a plea agreement, defendant pleaded guilty to count 1, on the condition he spend 365 days in county jail, with credit of 97 days for time served, and 171 days suspended pending successful completion of probation. Thereafter, in accordance with the plea agreement, the remaining allegation was dismissed, and defendant was granted formal probation for a period of three years on various terms and conditions of probation. In relevant part, defendant was not allowed to have any contact with the victim, including coming within 100 yards of the victim; defendant was required

3

to cooperate with his probation officer and follow all reasonable directives of his probation officer; and defendant was required to report to the probation office upon his release from jail and "thereafter as directed." Defendant did not object to the terms and conditions of his probation, but explicitly accepted the terms and conditions of his probation. In addition, defendant indicated that he understood the terms and conditions of his probation. He also agreed to report to the probation office in Victorville upon his release and thereafter as directed.

On March 8, 2019, a petition to revoke defendant's probation was filed alleging that defendant failed to report to the probation office as directed and failed to inform the probation officer of his place of residence. On the same day, the trial court summarily revoked defendant's probation and issued a bench warrant for his arrest.

On May 7, 2019, defendant admitted to violating his probation. The trial court reinstated defendant's probation and ordered him to serve the previously suspended sentence in county jail with credit for time served. The court also ordered defendant to report to the probation office in Barstow within 48 hours of his release.

On June 24, 2019, another petition to revoke defendant's probation was filed. The petition alleged that defendant failed to report to the probation office as directed and that defendant failed to inform the probation officer of his place of residence. The petition noted that on June 6, 2019, defendant had informed his probation officer that he was homeless in the Barstow area, and he did not provide a residence, a mailing address, or a phone number. The petition further stated that the probation officer had directed

4

defendant "to begin reporting daily to the Barstow Probation Office," and that defendant stated "he understood and would comply." Defendant, however, failed to report as directed and his whereabouts remained unknown to the probation department.

The trial court summarily revoked defendant's probation and issued a bench warrant for his arrest.

On October 2, 2019, the trial court held a probation revocation hearing. At that hearing, defendant's probation officer testified that defendant failed to report daily to the Barstow Probation Office as directed. On cross-examination, the probation officer stated that reporting daily to the Barstow Probation Office was not required of all probationers, but was required of all homeless probationers. The probation officer noted that the requirement to report daily, as a homeless probationer, applied at the Barstow Probation Office, and was unaware of whether that requirement was a county wide policy.

Defense counsel argued that the daily reporting requirement was an unreasonable condition of probation, particularly because homeless probationers were being subjected to more stringent conditions than non-homeless probationers, and requested the court reinstate defendant's probation. The trial court stated that while it agreed the daily reporting requirement was "very cumbersome," it was not discriminatory against defendant based on him being homeless. The court explained, "Probation has to keep track of people. So people with homes can have home inspections to make sure they're complying with probation. If they are transient, there's no way to tell whether they are compliant with probation. [¶] I agree with the People's point, probation is a privilege,

5

not a right. And so when you agree to probation, you agree to the terms and conditions of probation. That's done at sentencing." The court found defendant in violation of his probation for failing to report to probation as directed and terminated defendant's probation. The court thereafter sentenced defendant to the middle term of two years in state prison with 504 days of credit for time served.

Defendant filed a timely notice of appeal.

III

DISCUSSION

Defendant argues the probation condition requiring homeless probationers to report daily in person to a probation office is unconstitutional and invalid. Specifically, he asserts the reporting requirement violates a homeless probationer's right to travel and is unreasonable.

Initially, we find defendant's challenge to the probation condition is moot. "'[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.'" (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198; accord, *People v. DeLeon* (2017) 3 Cal.5th 640, 645 ["""[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the [opposing party], an event occurs which renders it impossible for this court, if it should decide the case in favor of [defendant], to grant

6

him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal"' as moot."].)

Defendant was sentenced to prison for two years with 504 days' credit for time served on October 2, 2019. He therefore had 226 days remaining on his prison sentence. With conduct credit, it appears defendant has now served his sentence. Defendant's contention is limited to the reasonableness and constitutionality of his reporting condition. Though the appeal originally presented a justiciable controversy, we can no longer provide a meaningful disposition when that term of probation has since terminated and defendant is no longer incarcerated. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120, fn. 5 (*Carbajal*) [probation condition challenge becomes moot after probation is terminated or revoked]; *In re Charles G.* (2004) 115 Cal.App.4th 608, 611.) Accordingly, any ruling by this court on the validity of the probation condition would have no practical effect and would not provide defendant any effective relief. As a result, this issue has been mooted by the termination of defendant's probation and release from prison. (*People v. Moran* (2016) 1 Cal.5th 398, 408, fn. 8 (*Moran*).)

Even if we exercised our discretion and considered the merits of the appeal, we reject defendant's contentions.

A.      *Applicable Legal Principles*

"When an offender chooses probation, thereby avoiding incarceration, state law authorizes the sentencing court to impose conditions on such release that are 'fitting and proper to the end that justice may be done, that amends may be made to society

7

for the breach of the law, for any injury done to any person resulting from that breach, and . . . for the reformation and rehabilitation of the probationer.'" (*Moran*, *supra*, 1 Cal.5th at pp. 402-403, quoting § 1203.1, subd. (j).) Thus, "a sentencing court has 'broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1.'" (*Moran*, at p. 403, quoting *Carbajal*, *supra*, 10 Cal.4th at p. 1120.) "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens."'" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355 (*O'Neil*), quoting *People v. Lopez* (1998) 66 Cal.App.4th 615, 624 (*Lopez*).)

Judicial discretion in selecting the conditions of a defendant's probation "is not unlimited." (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1355.) A probation condition is unreasonable and will not be upheld if it (1) has no relationship to the crime of which the defendant was convicted, (2) relates to conduct that is not criminal, and (3) requires or forbids conduct that is not reasonably related to future criminality. (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*); *O'Neil*, at p. 1355.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, at p. 379.) Thus, as a general rule, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Id*. at p. 380.)

8

However, "[j]udicial discretion to set conditions of probation is further circumscribed by constitutional considerations." (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1356.) Under this second level of scrutiny, if an otherwise valid condition of probation impinges on constitutional rights, the condition must be carefully tailored so as to be reasonably related to the compelling state interest in the probationer's reformation and rehabilitation. (*Ibid*.; *People v. Bauer* (1989) 211 Cal.App.3d 937, 942 (*Bauer*); *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*); *In re Victor L.* (2010) 182 Cal.App.4th 902, 910.) "The essential question . . . is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

Challenges to probation conditions ordinarily must be raised in the trial court or appellate review of those conditions will be deemed forfeited. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235 [extending the forfeiture rule to a claim that probation conditions are unreasonable, when the probationer fails to object on that ground in the trial court].) However, the forfeiture rule does not apply, and a defendant who did not object to a probation condition at sentencing may do so on appeal if the appellate claim "amount[s] to a 'facial challenge'" that challenges the condition on the ground its "phrasing or language . . . is unconstitutionally vague or overbroad" and the determination whether the condition is constitutionally defective "does not require scrutiny of individual facts and

circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court." (*Sheena K.*, *supra*, 40 Cal.4th at pp. 885, 887.) Thus, a challenge to a probation condition "that is capable of correction without reference to the particular sentencing record developed in the trial court can be said to present a pure question of law" (*id*. at p. 887, italics omitted), and such a challenge is reviewable on appeal even if it was not raised in the trial court (*id*. at p. 889). To the extent defendant raises a facial challenge to the constitutional validity of the homeless reporting condition, the claim is not forfeited by defendant's failure to raise it below. (*Ibid*.)

"Generally, we review the court's imposition of a probation condition for an abuse of discretion." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143, citing *Carbajal*, *supra*, 10 Cal.4th at p. 1121.) However, we independently review constitutional challenges to a probation condition. (*In re Shaun R.*, at p. 1143.) Based on the foregoing, we address the merits of defendant's arguments below.

B.      *Right to Travel*

Defendant argues the homeless reporting condition violates his constitutional right to travel. We disagree.

The right to travel and freedom of association are undoubtedly "constitutional entitlements." (*Bauer*, *supra*, 211 Cal.App.3d at p. 944.) But, as discussed, a probation condition may restrict these rights so long as it reasonably relates to reformation and rehabilitation. (*In re White* (1979) 97 Cal.App.3d 141, 146 (*White*).) A probation

condition that "serves to rehabilitate [the probationer] and protect public safety . . . may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens."'" (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1355, quoting *Lopez*, *supra*, 66 Cal.App.4th at p. 624.)

Here, the homeless reporting condition indirectly impinged upon defendant's constitutional right to travel because for purposes of convenience a homeless probationer may have to remain in close proximity to the probation office. However, as a probationer, defendant was "'not entitled to the same degree of constitutional protection as other citizens'" (*Lopez*, *supra*, 66 Cal.App.4th at p. 624); and, the condition reasonably served the compelling state interest in defendant's reformation and rehabilitation and also reasonably served to protect public safety by preventing future criminality. Defendant was a homeless recidivist offender who repeatedly violated protective orders and the terms and conditions of his probation. He also has a long history of committing domestic violence, dating back to 1994, and inflicting corporal injury on a spouse/cohabitant. Demonstrating his unwillingness to remain law-abiding, defendant committed his current offense, violation of a protective order, in October 2018 while he was on probation for the same offense. Furthermore, in the February 2017 prior case, after he was convicted of battery on his ex-wife and granted probation, defendant violated probation in that case four times. Moreover, he violated protective orders in March 2017, February 2018, and October 2018. In the latter violation, defendant pushed his ex-wife, chased her, and punched her in the arm. He also violated probation in this case twice.

11

Defendant's homelessness prevented the probation officer from making a home inspection to check for compliance, especially whether defendant was complying with the no-contact order or coming within 100 yards of his ex-wife. Defendant had demonstrated an unwillingness to seek help for his homelessness and apparent domestic violence issues. Defendant's underlying criminal conviction directly related to his homelessness. Thus, defendant's homelessness called for closer supervision of defendant. Defendant's probation officer in the present case had to supervise defendant closely given his long history of domestic violence, his repeated violations of probation and protective orders, his demonstrated physical violence against his ex-wife, and his previous probation violation in the current case for failure to report.

The foregoing record establishes that the imposition of the homeless reporting probation condition was necessary to protect public safety, deter future criminality, and serve the compelling state interest in defendant's reformation and rehabilitation. Defendant's recidivist and violence-prone criminal behavior required the strictest probationary supervision. The homeless reporting condition allowed defendant's probation officer to provide such supervision by making contact with defendant in person daily in order to ascertain defendant's circumstances, such as where defendant was living, and if he was abiding by his terms and conditions of probation.

Citing *People v. Smith* (2007) 152 Cal.App.4th 1245 (*Smith*), defendant argues that the probation condition was not specifically tailored to the individual probationer and that the daily reporting condition "has little, if any, relationship to the underlying crimes

or the attitudes or pressures that contributed to them." He also asserts there is no link between his homelessness and his offense "for nothing suggested his living situation contributed to his interaction with his wife." The court in *Smith* held, "Probation conditions restricting a probationer's exercise of his constitutional rights are upheld only if narrowly drawn to serve the important interests of public safety and rehabilitation, *and* if they are 'specifically tailored to the individual probationer.' [Citation.]" (*Smith*, at p. 1250.)

Defendant's individual probationer claim, however, does not raise a pure question of law. We cannot determine if the condition inappropriately restricts defendant's right to travel without a factual explanation from defendant, on the record, as to how the condition results in a constitutional violation as applied to his circumstances. This argument turns on the type of case-specific information that is only found in the record. The imposition of this condition is not "[a]n obvious legal error at sentencing that is 'correctable without referring to factual findings in the record.'" (*Sheena K.*, *supra*, 40 Cal.4th at p. 887; see *People v. Smith* (2001) 24 Cal.4th 849, 852.) The record in the present case is silent as to how defendant would be adversely affected by the probation condition. Defendant did not testify that he was unable to report daily in person to the probation office due to transportation issues or because he was homeless. He also did not assert the reporting condition was onerous or that he was unable to comply with its terms for any reason. Instead, he simply did not report to the probation office as directed. We

have no explanation about why he would be unable to report to the probation office on a daily basis.

In contrast, *Smith* involved a probation condition that barred the defendant from leaving Los Angeles County. The condition was often imposed on a defendant convicted of a sex offense. The defendant's job required him to leave the county on a regular basis, but the trial court refused to modify the order. The appellate court reversed, concluding that the condition impermissibly infringed upon the defendant's constitutional right to intrastate travel. While the condition was facially valid, it failed to take into consideration the defendant's specific circumstances, which made it invalid as applied to that particular defendant. (*Smith*, *supra*, 152 Cal.App.4th 1245.)

Similarly, the defendant in *White*, *supra*, 97 Cal.App.3d 141 was convicted of soliciting an act of prostitution. The defendant successfully challenged a probation condition that banned her from certain areas of "prostitution activity" by arguing that it was unreasonably restrictive because, among other reasons, the ban precluded her from using a bus depot and other basic services in that area. (*Id*. at p. 144.)

The existence or extent of infringement on defendant's constitutional rights as applied to him by the homeless reporting condition is an issue that requires analysis of the facts of defendant's individual situation on a case-by-case basis. This argument is not a pure question of law. Defendant could have objected to the condition at trial as applied to him. However, he failed to do so. As such, defendant's claim that the homeless reporting condition is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 is

forfeited for his failure to object to the condition at the time he was placed on probation and at the time he was reinstated on probation. When defendant was granted probation on February 19, 2019, he agreed, without objection, to a condition that he would report to the probation officer as directed.

In any event, even if defendant did not forfeit his claim to the reasonableness of the condition, we reject this claim. Although defendant's probation officer testified the Barstow Probation Office has a specific reporting policy for homeless probationers, there is no indication in the record to suggest the challenged probation condition was not specifically tailored to this defendant based on his criminal record. Here, defendant's criminal record and repeated violations of protective orders and probation required a heightened degree of supervision. Moreover, the challenged probation condition was specifically tailored to homeless probationers, like defendant, based on the need to protect public safety, deter future criminality, and serve the compelling state interest in homeless probationers' reformation and rehabilitation. The probation term is clearly less restrictive than incarceration and takes into account the fact defendant may not have had access to a telephone or cellular phone. Defendant's underlying criminal conduct was directly related to his homelessness, and the reporting condition reasonably relates to defendant's reformation and rehabilitation.

For the foregoing reasons, we conclude the homeless reporting condition did not violate defendant's right to travel because it enabled defendant's probation officer to effectively supervise him, it was reasonably related to both preventing defendant's future

15

criminality and serving the compelling state interest in defendant's reformation and rehabilitation. (See *Olguin*, *supra*, 45 Cal.4th at pp. 380-381 ["[a] condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality'"]; *Bauer*, *supra*, 211 Cal.App.3d at p. 942 [a condition of probation that impinges on constitutional rights will be upheld if the condition is carefully tailored so as to be reasonably related to the compelling state interest in the probationer's reformation and rehabilitation].) By committing his current felony offense while on a grant of probation, defendant had demonstrated that less restrictive conditions of probation were ineffective.

Defendant asserts he was entitled "to believe the probation officer would not act arbitrarily or unconstitutionally in designing the condition." It is well-settled that a probationer, like a parolee, retains basic constitutional protection against arbitrary and oppressive official action. (See *In re Taylor* (2015) 60 Cal.4th 1019, 1038; *People v. Reyes* (1998) 19 Cal.4th 743, 753-754; *People v. Woods* (1999) 21 Cal.4th 668, 691.) However, courts have observed that "probation is a privilege and not a right, and that adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights—as, for example, when they agree to warrantless search conditions." (*Olguin*, *supra*, 45 Cal.4th at p. 384, citing *People v. Ramos* (2004) 34 Cal.4th 494, 506; *People v. Bravo* (1987) 43 Cal.3d 600, 609 (*Bravo*).) As previously observed, reasonable probation conditions may infringe upon constitutional rights,

provided the conditions are narrowly tailored to achieve legitimate purposes, such as fostering the probationer's rehabilitation or protecting the public. (*Olguin*, at p. 384.)

The homeless reporting condition was specifically designed to alleviate the difficulties in monitoring homeless probationers and ensured the probationers' compliance with the terms of their probation. Requiring defendant, a homeless probationer, to report daily in person to the probation office facilitated his supervision and rehabilitation and did not amount to arbitrary or oppressive official action. The purpose of probation is to promote rehabilitation and foster public safety by reducing recidivism. (*Olguin*, *supra*, 45 Cal.4th at p. 380.) Probation officers must have the ability to closely monitor their probationers to ensure compliance with the terms of their probation. (See *Bravo*, *supra*, 43 Cal.3d at p. 610.)

Defendant's homelessness, criminal record, and repeated violations of probation and protective orders required a heightened degree of supervision. Defendant's homeless reporting condition was neither arbitrary nor oppressive. The imposition of the homeless reporting probation condition was necessary to protect public safety, deter future criminality, and serve the compelling state interest in defendant's reformation and rehabilitation, especially under the circumstances of this case. The alternative method of supervision, incarceration, would be much more restrictive than the privilege of probation. Therefore, the homeless reporting condition was reasonably necessary to effectively supervise and rehabilitate defendant and did not violate his right to be free from arbitrary and oppressive official action.

17

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

18